1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES BRIAN KLEISER, et al.,

                           Plaintiffs,

        v.

BENJAMIN CHAVEZ, et al.,

                           Defendants.

No.  3:20-cv-6079-BJR

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

        This matter is before the Court on the parties' cross-motions for summary judgment.

Having reviewed the materials submitted by the parties,[1] the Court: (1) DENIES Plaintiffs'

motion for summary judgment (Dkt. No. 18); and (2) GRANTS Defendants' motion for

summary judgment (Dkt. No. 33).  The reasons for the Court's decision are set forth below.

## I.      Background

**A.      The Parties**

        This case was filed on November 3, 2020, by Plaintiffs James Kleiser and Advanced

Electrical Concepts Inc., which is doing business as Mr. Electric of Clark County ("Mr.

Electric").  Mr. Electric is a corporation based in Vancouver, Washington that is licensed to

---

[1] In light of the parties' thorough briefing, the Court finds that oral argument is not necessary.

ORDER - 1

perform general electrical contractor services.  Mr. Kleiser is a master electrician and the principal of Mr. Electric.

Plaintiffs allege that employees of the Washington State Department of Labor and Industries ("the Department" or "L&I") violated their rights under the Fourth Amendment to the United States Constitution and under the Washington State Privacy Act.  Plaintiffs name three individual defendants who were employees of the Department at the times relevant to their complaint: (1) Benjamin Chavez, Lead Electrical Inspector; (2) Stephen Thornton, Chief Electrical Inspector; and (3) Faith Jeffrey, Electrical Division Supervisor.  The Department is also named as a defendant.

**B.    Plaintiffs' Former Employees**

In April 2018, two of Mr. Electric's employees terminated their employment with the company.  The employees were Kristina Jordan, a bookkeeper and records custodian, and Gregory Todd Bates, an electrician.  Defendants have offered emails indicating that Ms. Jordan resigned on April 2, 2018, and that Mr. Bates resigned on April 20, 2018.  Dkt. No. 39-1, Ex. T.

Plaintiff Kleiser asserts that Ms. Jordan and Mr. Bates "terminated their employment after Mr. Electric conducted an internal investigation revealing that the employees had initiated a secret relationship and that, during that time, Jordan had embezzled money from Mr. Electric."[2] Dkt. No. 19 at 2.  When Ms. Jordan and Mr. Bates began their employment with Mr. Electric, both employees had signed non-disclosure agreements regarding the company's confidential information.

Plaintiffs allege that Ms. Jordan accessed private company records that were stored in a cloud-based, password-protected system, including "audio and print records of Plaintiffs' phone

---

[2] In 2019, Ms. Jordan was charged with theft from Mr. Electric in Clark County Superior Court.  Dkt. No. 20, Ex. C.

ORDER - 2

conversations, email communications, and GPS location information from approximately

January 2017 through May 2018." Dkt. No. 16 at 4.  It was possible to obtain telephone

recordings because Mr. Electric recorded all ingoing and outgoing phone calls to its office

landline, and also had the option of recording calls made from mobile phones.  Dkt. No. 34-1,

Ex. L at 59-60.  In addition, Mr. Electric also had a system that recorded global positioning

system (GPS) data for its vehicles.  *Id.* at 60-61.  According to Plaintiff Kleiser, the company has

"GPS trackers on all the vans" and "a software system that basically tracks the movement of all

the vehicles."  *Id.* at 61.  The GPS data is accessible by a password-protected online website.  *Id.*

All administrative staff, including Ms. Jordan, had access to the GPS data.  *Id.*

**C.      Communications Between Plaintiffs' Former Employees and Defendant Chavez**

The Department of Labor and Industries enforces the provisions of Washington's

electrical code.  *See* RCW 19.28.321.  Between May 22 and May 24, 2018, Ms. Jordan and Mr.

Bates had a series of communications with Defendant Benjamin Chavez, who was employed by

the Department as a Lead Electrical Inspector, regarding Mr. Electric.  Because the timing and

substance of the communications is relevant to the pending motions, the Court sets forth key

events below.

**1.  May 22, 2018**

On May 22, 2018, Defendant Chavez called Mr. Bates in response to a voicemail

message that Mr. Bates had left with the Department.[3]  The parties have not identified any

communications between Mr. Bates and Defendant Chavez before that date.  Mr. Bates told

Defendant Chavez that Mr. Electric had two trainees "working out of ratio currently" and

---

[3] On April 3, 2018, Ms. Jordan and Mr. Bates left anonymous messages with an unknown person at the Department about Mr. Electric.  There is no evidence suggesting that these anonymous messages were conveyed to any of the individual defendants or that these messages resulted in any action by the Department.

ORDER - 3

provided addresses for the two worksites.  Dkt. No. 20, Ex. D at 2.  According to Defendants, the term "out of ratio" refers to a requirement that trainees must be supervised by a licensed electrician 75 percent of the time that they are a job site.  Dkt. No. 33 at 5 n.8 (citing RCW 19.28.161).

Defendant Chavez provided the information he had received from Mr. Bates to the Department's office in Vancouver.  A Department inspector visited both worksites that day and discovered that employees of Mr. Electric (Shannon Thomas and Theodore Martinchick) were working without supervision at the sites.[4]  Dkt. No. 20, Ex. D at 2.

### 2.  May 23, 2018

On May 23, 2018, Ms. Jordan sent an email to Defendant Chavez at 11:09 am.  Dkt. No. 20, Ex. D at 9.[5]  The parties have not identified any communications between Ms. Jordan and Defendant Chavez before that date.  Ms. Jordan attached a file to her email; however, Defendant Chavez responded to Ms. Jordan by email at 11:24 am to say:  "Not able to open them.  Can you please drop off at the local L&I office?"[6]  *Id.*  The parties have not pointed to evidence of any further communications between Defendant Chavez and Ms. Jordan on May 23rd.

### 3.  May 24, 2018

On May 24, 2018, Defendant Chavez and Ms. Jordan had multiple communications.  At 10:50 am, Ms. Jordan began sending a series of emails with attachments to Defendant Chavez.

---

[4] At the time, the Department's inspector issued the employees "hall passes."  *Id.*  The parties do not explain the meaning of the term "hall pass."

[5] Without citation to the record, Plaintiffs assert that "[f]rom May 22-24, 2018, Chavez and Jordan communicated hourly."  Dkt. No. 18 at 4.  However, the evidence submitted by Plaintiffs does not show any communications between Defendant Chavez and Ms. Jordan on May 22nd and only one email exchange on May 23rd.

[6] Defendant Chavez indicated that he received a USB drive from Mr. Bates at the Vancouver office on May 24, 2021.  Dkt. No. 20, Ex. D at 2.

ORDER - 4

Dkt. No. 34-1, Ex. N at 1.  At 10:52 am, Defendant Chavez sent Ms. Jordan an email stating "This is working.  Thanks!"  Dkt. No. 20, Ex. D at 10.  Defendants state that between 10:50 am and 12:39 pm, Ms. Jordan sent Defendant Chavez 88 attachments in 11 separate emails.  Dkt. No. 33 at 6.  Defendants state that the attachments "appeared to be records related to Plaintiffs' business operations" and "consisted variously of emails, miscellaneous documents, global positioning system (GPS) data (identified as 'Stop Events'), text messages, and recorded telephone calls."  *Id.*

At 10:54 am, Ms. Jordan sent Defendant Chavez an email stating that "I have a phone call from Shannon saying how she lied to the inspector.  This is because each extension has a password.  I was able to log into all the CELL PHONE only [sic].  I have also the office calling all the unlicensed guys to warn them.  I am labeling them right now to send you."  Dkt. No. 20, Ex. D at 10.  From the context of the record, it appears that Ms. Jordan was referring to recordings of phone calls that Mr. Electric employee Shannon Thomas and other company employees had made after a Department inspector had visited worksites on May 22, 2018, to follow up on the information Mr. Bates provided to Defendant Chavez that date.  At 11:12 am, Ms. Jordan sent Defendant Chavez an email labeled "Phone calls from May 22-23."  Dkt. No. 26, Ex. A.

At 12:26 pm, Ms. Jordan emailed Defendant Chavez to state that a person named Rick Lartz was currently at an address in Vancouver.  Dkt. No. 20, Ex. D at 8.[7]  At 12:38 pm, Defendant Chavez responded to Ms. Jordan to say "Be Careful with the names your [sic] sending.  He does have an (02) license."  *Id.* at 4.  The parties do not explain what "an (02)

---

[7] Plaintiffs assert that "Jordan provided Chavez with a link to [Lartz's] real-time GPS location and an audio recording of a phone conversation accompanying the GPS location."  Dkt. No. 25 at 9.  It appears from the record that Ms. Jordan sent a recording of the phone conversation at 12:39 pm.  Dkt. No. 34-1, Ex. N. at 4.

ORDER - 5

license" is; however, Defendants maintain that Defendant Chavez was informing Ms. Jordan in this message that Mr. Lartz was licensed in Washington.  Dkt. No. 33 at 8.  At 12:49 pm, Ms. Jordan wrote back and apologized, saying: "We assumed he didn't because the office was freaking out that you guys were going to be going there.  I should have verified. . . . Anyway, I will be more careful.  I shouldn't assume.  Through this all we haven't gone by assumptions. Not going to start now."  Dkt. No. 20, Ex. D at 12.

At 2:51 pm, Defendant Chavez sent an email to Ms. Jordan asking "Do you have all gps records for all employees?"  Dkt. No. 20, Ex. D at 4.  The record does not appear to include a copy of Ms. Jordan's initial response to this question; however, Defendants have offered a chart which indicates that Ms. Jordan replied at 3:13 pm that she only had GPS records for four employees.  Dkt. No. 34-1, Ex. N at 4.  Plaintiffs have also offered an email sent by Ms. Jordan at 4:15 pm stating: "But I sent you the Job history and those are date and time stamped.  That tells where every tech was on what days and what job they had.  Sorry again I wish I would have made it a little easier."  Dkt. No. 20, Ex. D at 7.  In response, Defendant Chavez sent Ms. Jordan an email at 4:15 pm asking "Can you call me real quick?"  *Id.*  The record does not include evidence indicating what Defendant Chavez and Ms. Jordan may have discussed by phone.

At 4:46 pm, Defendant Chavez sent an email to Defendant Faith Jeffrey titled "Mr. Electric Complaints."  Dkt. No. 20, Ex. D at 1.  He told Defendant Jeffrey that "I'm still getting information sent to me from my informants.  The amount of information they have given me already is unreal."  *Id.*  He indicated that the information included "recordings of the phone call made from trainee to their office verifying that they lied to the L&I Inspector, and also calls to multiple Journeyman [sic] telling them to go to the jobs that have the trainees working alone.

ORDER - 6

Not sure if we can use this evidence or not." *Id.* Defendant Chavez indicated "I'm going to keep collecting evidence and then get some advice." *Id.*

## D.   Subsequent Events

On May 25, 2018, Plaintiff Kleiser and Mr. Electric employee Greg McNaught both sent emails to Defendant Stephen Thornton, the Department's Chief Electrical Inspector, to demand the return of materials that Mr. Electric's former employees had provided to Defendant Chavez about Mr. Electric. Dkt. No. 20, Ex. D at 18-20. Plaintiff Kleiser and Mr. McNaught asserted that the materials had been illegally obtained by the former employees. *Id.*

The Department did not return the materials. The parties have not pointed to evidence indicating that Ms. Jordan or Mr. Bates continued to provide Plaintiffs' business records to the Defendants on or after May 25th. It is undisputed that Defendants never obtained a search warrant for the business records that the former employees provided to Defendant Chavez.

On May 29, 2018, Defendant Thornton emailed Defendant Jeffrey to ask how to respond to the emails from Plaintiff Kleiser and Mr. McNaught. Dkt. No. 20, Ex. D at 18. On May 30, 2018, Defendant Jeffrey wrote "[s]ounds like we have an arm chair lawyer" and stated that "[t]wo of their employees turned in to Ben [Chavez] several years' worth of invoices and gps data that very likely show unpermitted jobsites and unsupervised trainees."[8] *Id.* She concluded: "It sounds to me like this guy is parroting his attorney. When/if penalties are issued – he can appeal them then and make his arguments." *Id.*

On May 31, 2018, Defendant Chavez sent an email to Defendant Jeffrey titled "Mr Electric conversations and transcribed audio." Dkt. No. 20, Ex. D at 2-3. Defendant Chavez

---

[8] Defendant Jeffrey's email incorrectly stated that the employees were currently employed by Mr. Electric when they provided this information to Defendant Chavez. *Id.*

ORDER - 7

attached transcripts of phone recordings that Ms. Jordan had sent to him and discussed his communications with Mr. Bates and Ms. Jordan. In this email, Defendant Chavez noted that he had been told by another Department employee on May 24th that he "should make sure that it was legal" to listen to the phone recordings that Ms. Jordan had sent him. *Id.* at 2. Defendant Chavez also indicated that on May 24th "I called Faith [Jeffrey] and verified with her that I could proceed with the evidence that I had received. She stated I could." *Id.*

The parties have not pointed to evidence that indicates what, if anything, Defendants did over the next several months with the information they had received in May 2018 from Plaintiffs' former employees.

On October 15, 2018, Defendant Chavez received an email from Russ Darling, an employee of the State of Oregon Building Codes Division. Dkt. No. 20, Ex. D at 24. Mr. Darling indicated that he had opened an investigation involving several Mr. Electric employees, and asked when he could have copies of the information that Defendant Chavez had received from Ms. Jordan. On October 29, 2018, Defendant Chavez responded and sent Mr. Darling more than 75 files, which Defendant Chavez said was "everything that I have." *Id.* at 23-24.

On March 14, 2019, Defendant Chavez sent an email to Defendant Jeffrey that proposed issuing citations to Plaintiffs. Dkt. No. 20, Ex. D at 33-36. Defendant Jeffrey suggested some edits, and on March 15, 2019, Defendant Chavez sent Defendant Thornton a request to issue the proposed citations. Defendant Thornton responded the same day "Ok to issue." *Id.* at 30.

On March 19, 2019, the Department issued citations to Plaintiffs Kleiser and Mr. Electric for 60 alleged violations of Washington's electrical code, assessing penalties totaling $23,400. Dkt. No. 34-1, Ex. O at 6-20. Generally speaking, the citations concerned failure to provide or ensure proper supervision of trainees and performing work without a permit. *Id.* The

ORDER - 8

Department also issued citations to four of Mr. Electric's employees (Shannon Thomas, Theodore Martinchick, David Fairchild, and Christopher Doehne) for 24 alleged violations of requirements related to working as an electrical trainee without proper supervision; the penalties ranged from a warning to Mr. Fairchild to a $600 penalty to Mr. Martinchick. *Id.* at 1-5.

On April 15, 2019, Plaintiffs filed administrative appeals of the citations that had been issued to Mr. Kleiser and to Mr. Electric. The four employees who had received citations did not pursue appeals.

On March 13, 2020, the administrative law judge (ALJ) assigned to the appeal granted a motion in limine by Plaintiffs to exclude evidence that Ms. Jordan and Mr. Bates had provided to Defendant Chavez, finding that the evidence had been obtained in violation of the Washington Privacy Act and the Fourth Amendment to the United States Constitution. Dkt. No. 20, Ex. G. The same day, the ALJ dismissed some of the citations issued to Plaintiffs. Dkt. No. 20, Ex. F. On November 5, 2020, the ALJ issued an order dismissing the remaining citations. Dkt. No 20, Ex. H. The Department appealed the ALJ's decisions to the Washington State Electrical Board. Further proceedings on the Department's appeal have been stayed pending the resolution of this case.

**E.     Plaintiffs' Claims and the Pending Motions**

Plaintiffs' amended complaint raises federal claims against the individual defendants under 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Fourth Amendment, as well as state law claims under the Washington Privacy Act, RCW 9.73. Plaintiffs also seek declaratory and injunctive relief against the Department and the individual defendants.

ORDER - 9

Plaintiffs have moved for summary judgment on liability, with the issue of damages to be tried to a jury.  Plaintiffs' motion also requests injunctive relief.  Defendants have filed a cross-motion for summary judgment on all of Plaintiffs' claims.

## II.        Discussion

### A.        Legal Standards

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact.  *Wicker v. Oregon ex rel. Bureau of Labor*, 543 F.3d 1168, 1173 (9th Cir. 2008).  When the parties file cross-motions for summary judgment, the Court evaluates "each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### B.        Section 1983 Claims

Plaintiffs have brought claims under 42 U.S.C. § 1983 ("Section 1983") alleging that the individual defendants violated their rights under the Fourth Amendment against unreasonable searches and seizures.  Plaintiffs have moved for summary judgment as to the individual defendants' liability for these claims, arguing that "[a]s a matter of law, Defendants' warrantless acquisition of Plaintiffs' private communications and GPS location information constituted a 'search' and 'seizure' within the meaning of the Fourth Amendment."  Dkt. No. 18 at 16.

Defendants have filed their own motion for summary judgment on Plaintiffs' Section 1983 claims.  Defendants argue that they "did not search, let alone seize, Plaintiffs' property, nor otherwise infringe on Plaintiffs' reasonable expectations of privacy."  Dkt. No. 33 at 1.

ORDER - 10

Defendants argue that they "merely used information voluntarily provided to them, unsolicited, by private actors and, as a consequence, there was no state action and no need for a search warrant." Dkt. No. 38 at 1.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A "search" occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed," while a "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Defendants argue that Plaintiffs' Section 1983 claims are barred, pointing to two Fourth Amendment doctrines: (1) the third-party doctrine; and (2) the private search doctrine. Plaintiffs argue that neither of these doctrines is applicable here, relying in substantial part on the U.S. Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). The Court considers these arguments below.

**1.   The Third-Party Doctrine**

The Fourth Amendment's "third-party doctrine" largely traces its roots to the U.S. Supreme Court's decision in 1976 in *United States v. Miller*, 425 U.S. 435 (1976). *See Carpenter*, 138 S. Ct. at 2216. In *Miller,* the Court noted that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443.

ORDER - 11

Defendants argue that the third-party doctrine bars Plaintiffs' claims. Defendants maintain that because Plaintiffs provided Ms. Jordan and Mr. Bates with access to their data, Plaintiffs assumed the risk that their former employees would reveal that information to Defendants.

The Court finds that Defendants' arguments regarding the third-party doctrine are misplaced here. Even putting aside Plaintiffs' arguments that the third-party doctrine does not apply when the Government obtains "location information" such as GPS records (a point discussed below), the third-party doctrine applies in cases where an individual has "voluntarily conveyed" information to a third party. *See, e.g.*, *In re Application for Tel. Info. Needed for Criminal Investigation*, 119 F. Supp. 3d 1011, 1027 (N.D. Cal. 2015) (noting "the third-party doctrine applies when an individual has 'voluntarily conveyed' to a third party the information that the government later obtains.") For example, the Supreme Court's decision in *Miller* concerned a case where the Government subpoenaed a defendant's records from his bank without a warrant during a criminal investigation. The Court upheld the Government's ability to subpoena the records, noting that the bank records obtained by the Government "contain only information voluntarily conveyed to the banks" by the defendant, and finding that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 442-43.

By contrast, Plaintiffs allege here that their former employees improperly accessed and downloaded Plaintiffs' business records from the company's password-protected system and then provided those records to the Department. Plaintiffs have also offered evidence that Ms. Jordan obtained at least some of Plaintiffs' business records after she was no longer employed by Plaintiffs. Defendants do not point to any authority suggesting that Plaintiffs "voluntarily

ORDER - 12

conveyed" or "revealed" their business records to their former employees under such circumstances.  Therefore, Defendants fail to persuade the Court that they are entitled to summary judgment under the third-party doctrine.

### 2.  The Private Search Doctrine

Defendants also argue that the "private search doctrine" bars Plaintiffs' Section 1983 claims.  Because the Fourth Amendment applies only to governmental actions, the Supreme Court has held that the Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"  *Jacobsen*, 466 U.S. at 113 (citation omitted).  As a result, "a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment" and "such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully."  *Walter v. United States*, 447 U.S. 649, 656 (1980).  The Ninth Circuit has also held that "there is no seizure within the meaning of the [F]ourth [A]mendment when objects discovered in a private search are voluntarily relinquished to the government."  *United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976) (en banc).

In a recent decision issued after the parties completed their briefing on the pending motions, the Ninth Circuit summarized the "private search doctrine" by noting:

> As the Fourth Amendment protects individuals from government actors, not private ones, a private party may conduct a search that would be unconstitutional if conducted by the government. The private search doctrine concerns circumstances in which a private party's intrusions would have constituted a search had the government conducted it and the material discovered by the private party then comes into the government's possession.

*United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021) (internal citation omitted).

ORDER - 13

Here, Defendants argue that they "did not conduct a 'search' by viewing the documents and other information they were voluntarily and knowingly given, unprompted, by Ms. Jordan and Mr. Bates, both of whom were private actors." Dkt. No. 33 at 11.  The private search doctrine provides the more apt framework for evaluating Defendants' argument.  However, the private search doctrine also has limitations, which the Court considers below.

### a.  Did Defendants Exceed the Scope of the Antecedent Private Search?

As the Ninth Circuit recently noted, "an antecedent private search excuses the government from obtaining a warrant to repeat the search but only when the government search does not exceed the scope of the private one." *Wilson*, 13 F.4th at 968.  Here, Defendants maintain that they "did not expand the search originally conducted by Plaintiffs' former employees" and "learned nothing about Plaintiffs' unlawful conduct that had not already been known by Ms. Jordan and Mr. Bates." Dkt. No. 33 at 13.  In response, Plaintiffs do not argue that Defendants exceeded the scope of searches conducted by Ms. Jordan or Mr. Bates.[9]  As a result, the Court finds that there is no genuine issue of material fact on whether Defendants exceeded the scope of the antecedent private search of Plaintiffs' business records that had been conducted by Ms. Jordan and Mr. Bates.

### b.  Did Ms. Jordan or Mr. Bates Act as Instruments or Agents of Defendants?

The private search doctrine does not apply in cases where a private individual acts as a government instrument or agent.  *See, e.g.*, *United States v. Reed*, 15 F.3d 928, 931 (9th Cir.

---

[9] Plaintiffs do assert that Defendants "falsely certify that 'their examination of what was provided by Mr. Bates and Ms. Jordan *did not exceed the scope of what Mr. Bates and Ms. Jordan **had obtained before they contacted Defendants** [on May 22, 2018].'"  Dkt. No. 25 at 11 (quoting Def.'s response to Pl.'s motion for summary judgment) (emphasis added by Plaintiffs); *see also* Dkt. No. 36 at 15 (same).  However, this argument concerns the accuracy of Defendants' assertions about when Ms. Jordan and Mr. Bates last accessed Plaintiffs' business records, not whether Defendants exceeded the scope of searches of Plaintiffs' business records by the former employees.

ORDER - 14

1995) (noting "the Fourth Amendment does prohibit unreasonable intrusions by private individuals who are acting as government instruments or agents").  To determine whether a private person has acted as a government instrument or agent for Fourth Amendment purposes, courts must consider:  "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends."  *Id.* (quoting *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)).

In their reply brief in support of their summary judgment motion, Plaintiffs argue that time-stamped email communications establish that Defendants "(1) knew of and acquiesced in their informants' illegal interception and recording of Plaintiffs' private communications, including, but not limited to Jordan hacking into each of Plaintiffs' cell phones to intercept and record Plaintiffs' private phone conversations in real time; and (2) that Jordan's efforts were intended to assist Defendants' law enforcement efforts."[10] Dkt. No. 25 at 8.  In their motion for summary judgment, Defendants argue that it is "undisputed that Defendants did not instigate, encourage, counsel, or direct these private actors to turn over the recordings, data, or information."  Dkt. No. 38 at 1.  Evaluating the parties' arguments requires a close examination of the record before the Court.

As discussed earlier, Defendant Chavez first had contact with Mr. Bates on May 22, 2018, when Defendant Chavez returned a call Mr. Bates had made to the Department.  Mr. Bates reported at that time that two of Mr. Electric's employees were currently working "out of ratio."

---

[10] In their opening brief, Plaintiffs also argue that Defendant Chavez "exploited his informants' illegal access to Plaintiffs' information, encouraging Jordan and Bates to hack into Plaintiffs' online password protected database, unlawfully obtaining Plaintiffs' private phone conversations, email communications, and GPS location information."  Dkt. No. 18 at 4.

Dkt. No. 20, Ex. D at 2.  However, there is no evidence that Mr. Bates informed Defendant Chavez at that time that he or Ms. Jordan had searched or were continuing to search Plaintiffs' business records.  Similarly, Ms. Jordan's first contact with Defendant Chavez was on May 23, 2018, and there is also no evidence that she told Defendant Chavez on that date that she had searched or was continuing to search Plaintiffs' business records.  The record only includes one email exchange between Ms. Jordan and Defendant Chavez on that day, in which Ms. Jordan emailed Defendant Chavez a file and he responded "Not able to open them.  Can you please drop off at the local L&I office?"  Dkt. No. 20, Ex. D at 9.  As a result, there is no evidence to suggest that Defendant Chavez knew of and acquiesced in private searches by the former employees on May 22 or May 23, 2018.

On May 24, 2018 at 10:54 am, Ms. Jordan sent Defendant Chavez an email stating: "I have a phone call from Shannon saying how she lied to the inspector.  This is because each extension has a password.  I was able to log into all the CELL PHONE only [sic].  I have also the office calling all the unlicensed guys to warn them.  I am labeling them right now to send you." Dkt. No. 20, Ex. D at 10.  As noted above, the "phone call from Shannon" refers to a call that Shannon Thomas made after she was discovered by a Department inspector working without supervision on May 22, 2018.

This email is the first point in the record indicating that Defendant Chavez would have known that Ms. Jordan had obtained recordings of Plaintiffs' telephone calls by using a password to log into employees' cell phones.  However, nothing in the record indicates that Ms. Jordan told Defendant Chavez at that time that she intended to continue to obtain such information, nor did Defendant Chavez ask or encourage her to continue to engage in such conduct.

ORDER - 16

At 12:26 pm, Ms. Jordan emailed Defendant Chavez to report that Rick Lartz was currently at a worksite and provided the address of the site.  Dkt. No. 20, Ex. D at 8.  At 12:38 pm, Defendant Chavez responded to Ms. Jordan to say "Be Careful with the names you are sending.  He does have an (02) license."  *Id.* at 7.  One minute later, Ms. Jordan sent Defendant Chavez a recording of a telephone call labeled "Rick Lartz today 12 noon."  Dkt. No. 34-1, Ex. N at 4.  At this point, Defendant Chavez should have known that Ms. Jordan had continued to access Plaintiffs' telephone recordings in "real-time."

However, Plaintiffs have not pointed to evidence that Ms. Jordan or Mr. Bates continued after this point in time to conduct any new searches that acquired additional business records from Plaintiffs.  To be sure, Plaintiffs note that later in the day (at 2:51 pm), Defendant Chavez sent an email to Ms. Jordan asking "Do you have all gps records for all employees?"  Dkt. No. 20, Ex. D at 4.  However, Defendant Chavez did not ask Ms. Jordan to obtain such information, nor have Plaintiffs pointed to evidence that Ms. Jordan or Mr. Bates responded to this question by conducting a new search of Plaintiffs' GPS records.

Plaintiffs also note that Defendant Chavez told Defendant Jeffrey later in the day (at 4:46 pm) that "I'm still getting information sent to me from my informants.  The amount of information they have given me already is unreal . . . .  Not sure if we can use this evidence or not . . . .  I'm going to keep collecting evidence and then get some advice."  Dkt. No. 20, Ex. D at 1.  Again, however, Plaintiffs have not pointed to evidence that Ms. Jordan or Mr. Bates actually obtained additional business records from Plaintiffs after this point; instead, the latest time that Plaintiffs have shown that Ms. Jordan or Mr. Bates accessed Plaintiffs' business records was at approximately noon on May 24, 2018, when Ms. Jordan obtained the telephone recording of Mr. Lartz's conversation.  Dkt. No. 25 at 12.

ORDER - 17

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that there is not a genuine issue of material fact on whether Ms. Jordan or Mr. Bates acted as instruments or agents of Defendants when the former employees conducted their searches of Plaintiffs' business records. The evidence before the Court does not support a reasonable inference that the former employees conducted a search of Plaintiffs' business records with the knowledge and acquiescence of Defendant Chavez or any other defendant. "[O]nce a private search is complete, the subsequent involvement of government agents does not retroactively transform the original intrusion into a governmental search." *Sherwin*, 539 F.2d at 6. As a result, the searches of Plaintiffs' business records by Ms. Jordan and Mr. Bates cannot be regarded as government action in violation of the Fourth Amendment. In addition, as noted earlier, "there is no seizure within the meaning of the [F]ourth [A]mendment when objects discovered in a private search are voluntarily relinquished to the government." *Id.* at 8.

### 3.  The Application of *Carpenter* to this Case

Plaintiffs argue that the Fourth Amendment prohibited Defendants from acquiring or accessing their GPS data without a warrant.[11] To support this argument, Plaintiffs rely largely on *Carpenter v. United States*, 138 S. Ct. 2206 (2018).[12] Plaintiffs assert that *Carpenter* stands for the proposition that neither the third-party doctrine nor the private search doctrine apply when the government acquires or accesses "location information," such as the GPS data that Ms.

---

[11] The record does not include copies of the GPS data that Defendant Chavez received from Plaintiffs' former employees. However, Plaintiffs' counsel has represented in a declaration that her review of documents acquired from the Department indicate that Defendants acquired 488 pages containing Plaintiffs' GPS data from January 2017 through May 2018, that included more than 18,000 pinpointed locations, along with the date and exact amount of time spent at each location. Dkt. No. 20 at 3.

[12] Plaintiffs also point to the Washington Supreme Court's decision in *State v. Muhammad*, 451 P.3d 1060 (Wash. 2019). However, unlike decisions of the U.S. Supreme Court, decisions of the Washington Supreme Court on questions of federal constitutional law are not binding on this Court. In any event, *Muhammad* is distinguishable from this case for reasons similar to those discussed below.

ORDER - 18

1    Jordan provided to Defendant Chavez.  *See, e.g.*, Dkt. No. 25 at 3-5.  Defendants argue that

2    *Carpenter* is inapposite to the facts presented here.

3          In *Carpenter*, the U.S. Supreme Court considered "whether the Government conducts a

4    search under the Fourth Amendment when it accesses historical cell phone records that provide a

5    comprehensive chronicle of the user's past movements."  *Id.* at 2211.  In that case, the

6    Government had obtained court orders under the Stored Communications Act[13] that compelled

7    wireless carriers to provide the Government with cell-site location information (CSLI) for the

8    defendant.  The CSLI allowed the Government to identify the general location of the defendant's

9    cell phone whenever he made or received calls and provided substantial information about the

10   defendant's movements over a period of more than 100 days.  This location information placed

11   the defendant in the general vicinity of several robberies at the times those robberies occurred.

12          The *Carpenter* Court held that the Government was not entitled to obtain defendant's

13   CSLI from the telephone carriers without a warrant.  The Court held that "an individual

14   maintains a legitimate expectation of privacy in the record of his physical movements as

15   captured through CSLI" and that the location information "obtained from Carpenter's wireless

16   carriers was the product of a search."  *Id.* at 2217.  The Court stated that "[g]iven the unique

17   nature of cell phone location information, the fact that the Government obtained the information

18   from a third party does not overcome Carpenter's claim to Fourth Amendment protection."  *Id.* at

19   2220.  The Court concluded that "the Government must generally obtain a warrant supported by

20   probable cause before acquiring such records."  *Id.* at 2221.

---

[13] The Stored Communications Act "permits the Government to compel the disclosure of certain telecommunications records when it 'offers specific and articulable facts showing that there are reasonable grounds to believe' that the records sought 'are relevant and material to an ongoing criminal investigation.'"  *Id.* (quoting 18 U.S.C. § 2703(d)).  The showing required for an order under the statute "falls well short of the probable cause required for a warrant."  *Id.*

ORDER - 19

In essence, Plaintiffs suggest that *Carpenter* applies not only to situations where the Government without a warrant affirmatively "acquires" or "accesses" location information by compelling a third party to provide such information to the Government (i.e., situations involving the third-party doctrine), but also to situations where the Government "acquires" or "accesses" location information that a private party had provided to the Government voluntarily and without demand from the Government (i.e., situations involving the private search doctrine).  The Court finds that *Carpenter* does not extend to situations involving the private search doctrine.

*Carpenter* did not address a case where a private party obtained a person's location information through a private search and then voluntarily and without demand gave the Government such information.  Instead, the Court addressed a case in which the Government affirmatively compelled third-party wireless carriers to produce a person's location information, concluding that "[b]efore compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one – get a warrant."  *Id.* at 2221.  The distinction between the two types of cases is readily apparent:  There is governmental action under the latter, but not under the former.  *See, e.g.*, *Jacobsen*, 466 U.S. at 114 (noting Supreme Court "has consistently construed [Fourth Amendment] protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'").

Both the Sixth and the Eighth Circuits have noted that *Carpenter* did not address a case involving the private search doctrine.[14]  *United States v. Miller*, 982 F.3d 412, 431 (6th Cir. 2020)

---

[14] In *Wilson*, the Ninth Circuit stated in a footnote that "[w]e do note that the private search doctrine rests directly on the same precepts concerning the equivalence of private intrusions by private parties and the government that underlie the so-called third-party doctrine" and noted the narrowing of the third-party doctrine by *Carpenter*.

ORDER - 20

(noting "*Carpenter* asked only whether the government engaged in a 'search' when it compelled a carrier to search its records for certain information that the government demanded" and "did not cite *Jacobsen*, let alone address its private-search doctrine"); *United States v. Ringland*, 966 F.3d 731, 737 (8th Cir. 2020) (distinguishing *Carpenter* in a case involving the private search doctrine). It should also be noted that the Court in *Carpenter* also emphasized that its "decision today is a narrow one," 138 S. Ct. at 2220, which further counsels against extending the *Carpenter* decision here.

### 4. Summary

Plaintiffs have not demonstrated that they are entitled to summary judgment on the individual defendants' liability for Plaintiffs' Section 1983 claims. By contrast, Defendants' motion for summary judgment shows that there are no genuine issues of material fact and that Defendants are entitled to summary judgment on Plaintiffs' Section 1983 claims as a matter of law.

## C. Washington Privacy Act Claims

Plaintiffs have also brought claims against the individual Defendants for violations of the Washington State Privacy Act. In relevant part, the Privacy Act prohibits intercepting or recording:

> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

---

*Wilson*, 13 F.4th at 971 n.9. However, this discussion in *Wilson* is dicta, which the Court included in a footnote in the context of noting that it could not overrule *Jacobsen* or other Supreme Court precedent.

RCW 9.73.030.[15]  The Washington Supreme Court has held that to violate the Privacy Act, "[t]here must have been (1) a private communication transmitted by a device, which was (2) intercepted or recorded by use of (3) a device designed to record and/or transmit (4) without the consent of all parties to the private communication."  *State v. Roden*, 321 P.3d 1183, 1186 (Wash. 2014).

Plaintiffs suggest that Defendants "intercepted" Plaintiffs' private communications, arguing that the term "intercept" means "to gain possession of [something]."  Dkt. No. 18 at 20. However, as Defendants note, the Washington Supreme Court has interpreted the term "intercept" in the Privacy Act to mean "to 'stop . . . before arrival . . . or interrupt the progress or course.'"  *Roden*, 321 at 1188 (quoting Webster's Third New International Dictionary 1176 (2002)).  Under the Washington Supreme Court's interpretation of the term, there is no evidence that any of the Defendants "intercepted" any of Plaintiffs' private communications or conversations.

Plaintiffs also argue that Defendants violated the Privacy Act by:  (1) storing Plaintiffs' private phone conservations in the Department's computerized databases; and (2) using a computer to transcribe Plaintiffs' private phone conversations; and (3) saving the transcripts to the same Department databases.  Dkt. No. 36 at 12.  Plaintiffs maintain that by storing these conversations on a computer as well as by transcribing them, Defendants used a "device" to "record" the conversations.

---

[15] Plaintiffs also point to RCW 9.73.060, which creates liability for "[a]ny person who, directly or by means of a detective agency or any other agent, violates the provisions of this chapter . . . ."  However, as discussed earlier, the Court concludes that neither Ms. Jordan nor Mr. Bates acted as Defendants' agents here.

ORDER - 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants argue that they cannot be held to have violated the Privacy Act as a matter of law.  To support their argument, Defendants point to the Washington Court of Appeals' decision in *Kearney v. Kearney*, 974 P.2d 872, *review denied*, 989 P.2d 1137 (Wash. App. 1999).  In *Kearney*, a mother had secretly recorded several conversations that her husband had with the couple's children.  In a divorce proceeding, the mother provided these recordings to the guardian ad litem (GAL) in the case, who filed transcripts of the recordings with the court.  The GAL also provided copies of the recordings and the transcripts to the children's psychological evaluator in the case, who prepared and filed a declaration that included excerpts of the transcripts of the calls.  The father sued the GAL, the evaluator, and the mother's attorney for violating the Privacy Act.  The trial court granted the defendants' motion to dismiss, which was affirmed by the Court of Appeals.  As Defendants note, the Washington Court of Appeals also found that the father's appeal of the trial court's dismissal of his claims was frivolous.  *Id.* at 878.

In effect, Plaintiffs argue that if a person intercepts or records a private communication in violation of the Privacy Act and then gives a copy of the recording of that communication to another person, the person who was given the recording also violates the Privacy Act if he or she stores the recording on a computer or has the recording transcribed.  Plaintiffs cite no cases that found violations of the Privacy Act under such circumstances.  Indeed, under Plaintiffs' interpretation of the Privacy Act, *Kearney* would have been incorrectly decided because the GAL in that case transcribed the recordings that the mother had provided to her.  Therefore, the Court denies Plaintiffs' motion for summary judgment on their claims under the Washington Privacy Act, and grants Defendants' motion for summary judgment on Plaintiffs' Privacy Act claims.

ORDER - 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**D.      Injunctive Relief**

Plaintiffs also request injunctive relief requiring the Department to return information it received from Ms. Jordan and Mr. Bates, to purge its systems of this information, and to prohibit Defendants from further use, publication, or distribution of Plaintiffs' communications and GPS location information.  As Defendants note, Plaintiffs' complaint indicates that their request for injunctive relief "is not asserted as a separate cause of action, but as a remedy" for Defendants' alleged violation of their civil rights and the Washington Privacy Act.  Dkt. No. 16 at 12-13. Because the Court finds that Defendants did not violate Plaintiffs' rights under the Fourth Amendment or the Washington Privacy Act, the Court denies Plaintiffs' request for injunctive relief.

### III.      Conclusion

For the foregoing reasons, the Court:  (1) DENIES Plaintiffs' motion for summary judgment (Dkt. No. 18); and (2) GRANTS Defendants' motion for summary judgment (Dkt. No. 33).

Dated:  December 3, 2021

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 24